**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin Ogden, | No. CV08-2180 PHX DGC |
| Plaintiff, | |
| vs. | **ORDER** |
| CDI Corporation, | |
| Defendant. | |

Defendant CDI Corporation has filed a motion for summary judgment. Dkt. #60. Plaintiff Martin Ogden has responded. Dkt. #79. The motion is fully briefed, and the Court held oral argument on June 29, 2010. For reasons that follow, the Court will grant in part and deny in part CDI's motion for summary judgment. Dkt. #60.

**I.  Background.**

CDI is a professional services corporation that provides staffing to its clients. Dkt. #5 at 2. Ogden worked as a recruiter for CDI from October 9, 2000 until October 16, 2008. *Id.* From approximately November of 2005 through October of 2008, Ogden worked more than 40 hours per week but was not paid overtime. *Id.* at 4.

In late 2007, Ogden accepted a position in CDI's newly-created "Direct Hire" team. Members of this team earned commissions based on the number of job orders they filled and, according to Ogden, he accepted the new position because of a promise from CDI that it would provide him with enough job orders to make at least as much money in the new position as he had in his previous position. *Id.* at 4-5. According to Ogden, CDI did not fulfill this promise. *Id.* at 5.

On December 23, 2008, Ogden filed suit against CDI asserting a claim under the Fair Labor Standards Act ("the Act"), 29 U.S.C. § 203, *et seq*. (Count One), and a claim for breach of the duty of good faith and fair dealing (Count Two). Ogden claims CDI violated the Act by refusing to compensate him for overtime work and breached the duty of good faith by failing to provide him with sufficient job orders.

**II.	Legal standard.**

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex*, 477 U.S. at 323. Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v.*

*S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

**III.    Analysis.**

    **A.    Count One.**

CDI has moved for summary judgment on Ogden's claim that CDI failed to pay him overtime as required by the Act. Dkt. #60 at 14-19. CDI previously moved for summary judgment on this cause of action, arguing that Ogden was exempt from the provisions requiring overtime pay because he was a highly compensated employee. Dkt. #32. The Court denied CDI's motion because there was a "[q]uestion[] of fact concerning the nature of Ogden's job" and because CDI failed to meet its burden of establishing that the highly compensated employee exemption applied to Ogden. Dkt. #41 at 4. Now that discovery has been completed, CDI claims that it is undisputed that Ogden qualifies as a highly compensated employee.

The Act has an exemption for highly compensated employees. 29 C.F.R. § 541.601. When this exemption applies, the employee's wages and hours are not regulated under the Act. Generally, "[d]efendants bear the burden of establishing the applicability of the highly compensated employee exemption because exemptions are to be narrowly construed and limited to those establishments plainly and unmistakably within the terms and spirit" of the Act. *Henry v. Quicken Loans Inc.*, No. 2:04-CV-40346, 2009 WL 596180, *10 (E.D. Mich. Mar. 9, 2009) (citing *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997)); *see Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005); *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 468 (S.D.N.Y. 2008).

The highly compensated exemption applies to employees who have a total annual compensation of at least $100,000 and who customarily and regularly perform one of the exempt duties of an administrative employee.[1] 29 C.F.R. § 541.601. These duties include

---

[1] CDI need not prove that Ogden exercised discretion or independent judgment in the performance of his duties. *Sarviss v. Gen. Dynamics Info. Tech., Inc.,* 663 F. Supp. 2d 883, 893 (C.D. Cal. 2009); *Amendola*, 558 F. Supp. 2d at 478. This question is frequently addressed in the authorities cited by CDI.

1 "the performance of work directly related to the management or general business operations
2 of the employer or the employer's customers," such as "tax; finance; accounting; budgeting;
3 auditing; insurance; quality control; purchasing; procurement; advertising; marketing;
4 research; safety and health; personnel management; human resources; employee benefits;
5 labor relations; public relations; government relations; computer network; internet and
6 database administration; legal and regulatory compliance; and similar activities." 28 C.F.R.
7 § 541.201(a), (b). Administrative duties are distinguishable from "working on a
8 manufacturing production line or selling a product in a retail or service establishment." 29
9 C.F.R. § 541.201(a).

10 Ogden does not dispute that he earned more than $100,000 during each of the three
11 years at issue in this case. As a result, the only question before the Court is whether Ogden
12 regularly performed one of the duties of an administrative employee. CDI contends that
13 Ogden's deposition testimony shows that Ogden regularly performed one of the duties of an
14 administrative employee. *See* Dkt. #60 at 17-19 (citing CDI's statement of facts at ¶¶ 5-6,
15 8-11, 13, 17-19, 22-23, 25-28, 30-34, and 36-37, all of which cite Ogden's deposition).

16 In examining the portions of Ogden's deposition cited by CDI, it is clear that Ogden
17 performed the following duties: he would search for individuals who might be qualified for
18 certain IT jobs (Dkt. #62-1 at 5), he would determine whether "their background matches up
19 with a job order" based on both subjective and objective factors (Dkt. #62-1 at 12, 19, 25),
20 he would contact them and determine their salary requirements (Dkt. #62-1 at 32, 41), he
21 would provide the resumes of qualified candidates to his account manager who could decide
22 whether to present those candidates to the client (Dkt. #62-1 at 45), if the client was
23 interested in hiring a candidate, he would contact the candidate for an interview with the
24 client (Dkt. #62-1 at 46), and if the client decided to hire the candidate, he would call the
25 candidate to make an offer on behalf of the client (Dkt. #62-1 at 46). Ogden made clear in
26 his deposition testimony that his candidates were subject to vetting by his account manager
27 before they were presented to the client (Dkt. #62-1 at 45), that he could not determine how
28 much time a candidate would have to decide whether to accept an offer (Dkt. #62-1 at 53),

and that he had authority to make decisions within a very limited range because important decisions were ultimately made by the account manager (Dkt. #62-1 at 53). CDI contends that Ogden had exclusive authority to recommend a candidate to a client because "[e]xcept in very rare circumstances, the account manager would forward the candidate to the client based solely on Ogden's recommendation." Dkt. #60 at 18. This allegation cannot be accepted as true, however, because Ogden testified that the account manager would decide whether "to go with [his] candidate as one of the three or so to give to the client." Dkt. #62-1 at 45; *see* Dkt. #62-1 at 53 ("I really had no authority to do anything involving the candidates. It was always the account manager overrules and decided.").

CDI has failed to show that Ogden's duties fall into the categories listed in 29 C.F.R. § 541.201(b) as a matter of undisputed fact. CDI asserts that Ogden's services were "in functional areas such as research, personnel management, human resources, and similar activities that are recognized as functions directly related to the running or servicing of a business," but fails to provide the Court with any authority showing that Ogden's primary duties – scouting for candidates and recommending them to an account manager who, in turn, had complete discretion as to whether to recommend the candidate to a client – are administrative under the Act. Dkt. #60 at 16. Indeed, Ogden's duties as described in his deposition are not the same, or as administrative in nature, as the duties of exempt employees described in the cases and opinion letters cited by CDI. *See* Dep't of Labor Opinion Ltr., Wage & Hour Div., 2005 WL 3308616 (Oct. 25, 2005) (finding recruiters for a staffing company exempt when their duties actually extended to the *hiring, managing, disciplining, and termination* of candidates placed with the staffing company's clients); Dep't of Labor Opinion Ltr., Wage & Hour Div., 2000 WL 34444341 (Dec. 8, 2000) (finding employees working in the human resources department of a company exempt when they interview applicants, *researched and implemented personnel processes and policies*, and *directly* made recommendations to the company's hiring managers who had the ultimate hiring authority); Dep't of Labor Opinion Ltr., Wage & Hour Div., 1970 WL 26434 (Aug. 11, 1970) (finding recruiters for a staffing company exempt when they conducted interviews, evaluated

1 applicants, and had "*complete authority* and *sole responsibility* for determining which
2 prospective applicant will be referred to any specific [client]") (emphasis added); *Andrade*
3 *v. Aerotek, Inc. (Andrade I)*, CCB-08-2668, 2009 WL 2757099, *4 (D. Md. Aug. 26, 2009)
4 (stating that certain employees "appear[ed] to fall within the FLSA's administrative
5 exemption" because their duties include "interviewing" and "recommending candidates to
6 staff positions," but not expressly holding as such); *Andrade v. Aerotek, Inc. (Andrade II)*, ---
7 F. Supp. 2d ---, 2010 WL 1244308 (D. Md. Mar. 30 2010) (finding a recruiter for a staffing
8 company exempt where she helped place candidates in contract positions with her company's
9 clients, "communicated directly with [her company]'s clients on a regular basis," *had*
10 *authority to discipline, manage, coach, and counsel the candidates after placement*, and
11 "exercised discretion and independent judgment on matters of significance"); *Hudkins v.*
12 *Maxim Healthcare Servs., Inc.*, 39 F. Supp. 2d 1349 (M.D. Fla. 1998) (finding recruiters for
13 a staffing company exempt when their duties included recruiting nurses, placing nurses,
14 approving pay rates for nurses, *counseling and disciplining nurses*, and *firing nurses*). These
15 cases are distinguishable from the present case because CDI has presented no evidence that
16 Ogden hired or fired candidates, made direct recommendations to clients, or managed and
17 disciplined candidates.

18 At oral argument, CDI contended that these differences between Ogden's duties and
19 the duties of the administrative employees in its cited authorities are unimportant they relate
20 to whether an employee exercised discretion and independent judgment in performing his
21 duties, not whether he performed tasks related to the management or business of his
22 company. The Court disagrees. CDI is correct that several of its cited authorities are
23 unclear. It is not always obvious whether the court or Department of Labor is discussing
24 whether an employee exercised discretion or whether an employee performed duties related
25 to the management of a company – two separate inquiries under the Act. *See* Dep't of Labor
26 Opinion Ltr., Wage & Hour Div., 1970 WL 26434 (Aug. 11, 1970); *Hudkins*, 39 F. Supp.
27 2d at 1349.

28 The distinction is clear in some of the authorities cited by CDI. For instance, the two

determinations are made separately in *Andrade II*. --- F. Supp. 2d ---, 2010 WL 1244308. In *Andrade II*, the plaintiff worked as a recruiter for a company that provided staffing services. It was undisputed that plaintiff would source, screen, and interview possible candidates; determine whether a candidate would be a good fit; recommend the candidate to her account manager who would determine whether to present the candidate to the client; negotiate pay with a candidate within the margins provided by the client; manage the employees while on assignment; administer performance counseling, coaching, and disciplinary measures; and communicate with the clients to ensure there were no ongoing problems with the candidates. *Id.* at *2-3. The court determined that the employee was exempt because she worked in human resources (given that she recruited, hired, and managed the candidates while in the client's employment) and because she acted "as [an] adviser[] or consultant[]" to her employer's clients. *Id.* at *6. The court expressly noted that it was considering only the question of whether her work consisted of tasks relating to the management or business operations of her company's clients and was not considering the separate question of whether her duties also required discretion and independent judgment. *Id.* at *6-7; *see also* Dep't of Labor Opinion Ltr., Wage & Hour Div., 2005 WL 3308616 (Oct. 25, 2005) (finding that "recruiting, hiring and managing the temporary labor pool" was work related to the company's clients' business, while separately finding that the determination of who to recruit, hire, and recommend could support a finding of discretion and independent judgment). These authorities suggest that Ogden's undisputed duties do not satisfy the administrative or business operations requirement.

At oral argument, CDI pointed to 29 C.F.R. § 541.203(e) and argued that Ogden's duties clearly fell into the administrative category. The regulation provides:

> Human resources managers who formulate, interpret or implement employment policies and management consultants who study the operations of a business and propose changes in organization generally meet the duties requirements for the administrative exemption. However, personnel clerks who "screen" applicants to obtain data regarding their minimum qualifications and fitness for employment generally do not meet the duties requirements for the administrative exemption. Such personnel clerks typically will reject all applicants who do not meet minimum standards for the particular job or for employment by the company. The minimum standards are usually set by the

> exempt human resources manager or other company officials, and the decision to hire from the group of qualified applicants who do meet the minimum standards is similarly made by the exempt human resources manager or other company officials. Thus, when the interviewing and screening functions are performed by the human resources manager or personnel manager who makes the hiring decision or makes recommendations for hiring from the pool of qualified applicants, such duties constitute exempt work, even though routine, because this work is directly and closely related to the employee's exempt functions.

29 C.F.R. § 541.203(e). The Court finds that this regulation support's Ogden's position that his duties were not administrative. According to his deposition testimony, Ogden was more like the personnel clerk who screens applicants and does not "formulate, interpret or implement employment policies." *Id.*

The Court further finds that *Andrade II* and 29 C.F.R. § 541.203(e) preclude summary judgment in this case. Although many of the duties in *Andrade II* are nearly identical to the duties of Ogden – finding candidates, recommending them to an account manager, and setting pay within the margins provided by the client – others are well beyond the undisputed duties of Ogden. CDI has presented no evidence that Ogden managed employees while they were on assignment, administered any performance reviews or disciplinary measures, or discussed the ongoing performance of the candidates with clients in order to ensure that the client's human resources needs were met. These duties were a substantial part of the court's determination in *Andrade II*, and they simply are not present here. *Id.* at *6 (focusing on the fact that plaintiff "helped manage the contractors once they were hired" meaning that she was "performing work in the functional areas of personnel management and human resources"). Similarly, CDI has presented no evidence that Ogden "formulate[d], interpret[d] or implement[ed] employment policies[.]" 29 C.F.R. § 541.203(e). As a result, the Court finds that CDI has not met its burden of showing that the exemption applies as a matter of undisputed fact in this case, particularly given that the exemption is to be construed narrowly. *Cleveland*, 420 F.3d at 988; *Henry*, 2009 WL 596180 at *10.

**B.    Count Two.**

In Arizona, there is an implied covenant of good faith and fair dealing in every contract, including employment contracts. *Wells Fargo Bank v. Ariz. Laborers, Teamsters*

*& Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002); *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1040 (Ariz. 1985). "[T]he implied-in-law covenant of good faith and fair dealing protects the right of the parties to an agreement to receive the benefits of the agreement that they have entered into." *Wagenseller*, 710 P.2d at 1040. As a result, the covenant prohibits a party from preventing the other party to the contract from receiving the benefits and entitlements of the agreement. To show a breach, Ogden could present evidence that CDI breached the express terms of a contract or that it "execise[d] discretion retained or unforeclosed under [the] contract in such a way as to deny [him] a reasonably expected benefit of the bargain." *Wells Fargo*, 38 P.3d at 30 (internal quotation and citation omitted); *Picht v. Peoria Unified Sch. Dist. No. 11 of Maricopa County*, 641 F. Supp. 2d 888, 896 (D. Ariz. 2009).

CDI notes that Ogden does not assert a claim for breach of contract, but rather alleges that CDI breached the covenant by failing to provide him with a sufficient number of job orders each month. CDI contends that Ogden's claim is merely based on his expectation that he would be provided with a certain number of job orders, an expectation that was not justified or agreed to by CDI. Dkt. #60 at 21. CDI further contends that Ogden can prevail on this claim only if he can show "some wrongful conduct, whether it is overt conduct or inaction, such as evasion of the spirit of the bargain" on the part of CDI. *Id.* at 22. CDI contends that Ogden has failed to do so and that he "has no evidence to support his suspicion that CDI deliberately or maliciously withheld job orders from him." Dkt. #60 at 22. CDI further argues that Ogden cannot rebut its showing that the job orders were assigned in a fair and legitimate manner. CDI points to the affidavit of Mick Geis, the manager of the Direct Hire Recruiting team, who stated that "if the Direct Hire Recruiters were too busy with existing job orders to dedicate adequate efforts to a new order, or if they had previously-assigned orders for which they had not submitted any candidates," the new job orders would be forwarded to a different recruiting team. Dkt. #65 at 2.

In response, Ogden includes an affidavit in which he analyzes the distribution of job orders while he worked on the Direct Hire Team. Dkt. #80 at 12-17. He notes that he was

1  getting fewer job orders than he wanted and fewer orders than he needed to earn adequate
2  compensation. *Id.* at 12, 15. He also includes several emails in which he expressed such
3  concern to other CDI employees. *Id.* at 16-17. Nothing in the affidavit, however, supports
4  a finding that CDI intentionally withheld job orders from Ogden. Moreover, at oral argument
5  Ogden admitted that there was nothing in his employment contract which promised him a
6  certain number of job orders to fill.

Ogden has failed to produce evidence that CDI breached the express terms of his contract or "execise[d] discretion retained or unforeclosed under [the] contract in such a way as to deny [him] a reasonably expected benefit of the bargain." *Wells Fargo*, 38 P.3d at 30 (internal quotation and citation omitted). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The burden is on the nonmoving party to point the Court to materials in the record that establish a genuine issue of material fact. *See Carmen*, 237 F.3d at 1028-29. Ogden has failed to meet this burden. The Court will grant summary judgment in favor of CDI on this claim.

**IT IS ORDERED:**

1. Defendant's motion for partial summary judgment (Dkt. #60) is **granted in part and denied in part**.
2. The Court will set a final pretrial conference by separate order.

Dated this 30th day of June, 2010.

_____
David G. Campbell
United States District Judge