**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin Ogden, | No. CV08-02180-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| CDI Corporation, | |
| Defendant. | |

Defendant filed a renewed motion for award of attorneys' fees and related non-taxable expenses pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure, Rule 54.2 of the Local Rules of Civil Procedure, and A.R.S. § 12-341.01. Doc. 169. The motion is fully briefed. (Docs. 171, 172, 173.) The Court has determined that oral argument would not materially assist its ruling. Fed. R. Civ. P. 78(b). For reasons stated below, the Court will grant the motion in part.

**I.    Background.**

Plaintiff Martin Ogden filed a complaint against Defendant CDI Corporation on November 28, 2008. Doc. 5. Plaintiff alleged two causes of action: (1) violation of the Fair Labor Standards Act ("FLSA") and (2) breach of the implied covenant of good faith and fair dealing. *Id.* Both claims pertained to Plaintiff's employment with Defendant. *Id.* This Court granted partial summary judgment to Defendant on the implied covenant claim on June 30, 2010. Doc. 84. A jury rendered a verdict in favor of Defendant on the FLSA claim, and final judgment on all claims was entered on March 9, 2011. Doc. 131. Defendant timely filed for attorneys' fees and non-taxable costs on March 21, 2011.

1    Doc. 137.  Plaintiff then filed a motion for reconsideration (Docs. 132, 133), motions for

2    a new trial and for relief from judgment (Docs. 139, 140, 142), a motion for relief from

3    order (Docs. 143, 144), and a motion for relief from final judgment (Doc. 161).  This

4    Court denied Defendant's motion for attorneys' fees without prejudice after Plaintiff

5    appealed the case to the Ninth Circuit.  Doc. 155.  The Ninth Circuit affirmed this Court's

6    order denying Plaintiff's motion for a new trial on July 20, 2012.  Doc. 167-2.

7           Defendant re-filed its motion for attorneys' fees and costs totaling $59,861.00.

8    Doc. 169.  The fee request is limited to the defense of Plaintiff's second claim which was

9    eliminated by summary judgment.  *Id.*

10   **II.    Legal Standard.**

11          Under Arizona law, "[i]n any contested action arising out of a contract, express or

12   implied, the court may award the successful party reasonable attorney fees."  Ariz. Rev.

13   S. § 12-341.01(A).  The trial court has discretion regarding an award of attorneys' fees.

14   *See Wilcox v. Waldman,* 744 P.2d 444, 450 (Ariz. App. 1987).  To determine whether to

15   award attorneys' fees, courts consider the merits of the unsuccessful party's claim,

16   whether the successful party's efforts were completely superfluous in achieving the

17   ultimate result, whether assessing fees against the unsuccessful party would cause

18   extreme hardship, whether the successful party prevailed with respect to all relief sought,

19   whether the legal question presented was novel or had been previously adjudicated, and

20   whether a fee award would discourage other parties with tenable claims from litigating.

21   *Am. Const. Corp. v. Philadelphia Indem. Ins. Co.*, 667 F. Supp. 2d 1100, 1106-07 (D.

22   Ariz. 2009) (citing *Assoc. Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985)).

23   No single factor is to be considered determinative.  *See Velarde v. PACE Membership

24   Warehouse, Inc.*, 105 F.3d 1313, 1319-20 (9th Cir. 1997).

25   **III.   Analysis.**

26          **A.     Merits of Plaintiff's Claims.**

27          Plaintiff lost his second claim on summary judgment.  Defendant prevailed on the

28   claim in every significant respect.

1    In accordance with the Court's Case Management Order (Doc. 17), Defendant met

2  with Plaintiff on June 25, 2009 to engage in settlement discussions.  Doc. 145 at 5.  It is

3  undisputed that Plaintiff, who was no longer represented by counsel, went to the meeting

4  unprepared to tender a settlement demand.  *Id.*; Doc. 149 at 5.  Instead, Plaintiff provided

5  a written settlement demand on June 29, 2009, containing a seven page explanation of

6  why he believed he would prevail on his claim.  The parties disagree on who is to blame

7  for the failure to achieve a settlement, but it is clear that Plaintiff demanded

8  compensation to settle and Defendant ultimately established that Plaintiff's claim lacked

9  merit.

10    The outcome of this case and the parties' settlement efforts favor an award of

11  attorneys' fees to Defendant.

12    **B.    Whether Assessing Fees Would Cause Extreme Hardship.**

13    Defendant argues that there is no basis for a finding that awarding attorneys' fees

14  would cause Plaintiff extreme hardship.  Doc. 145 at 6.  To support its claim, Defendant

15  offers the undisputed fact that Plaintiff earned over $100,000 in each of the last three

16  years of his employment with Defendant.  Docs. 33, 36.  Defendant asserts that such data

17  demonstrates that Plaintiff presently earns the same amount, or at least has the capacity to

18  do so.  Doc. 145 at 6.  Thus, according to Defendant, an award of $59,861 in attorneys'

19  fees "should not pose any hardship, much less an extreme hardship."  *Id.*

20    "The party asserting financial hardship has the burden of coming forward with

21  *prima facie* evidence of the financial hardship."  *Woerth v. City of Flagstaff*, 808 P.2d

22  297, 305 (Ariz. Ct. App. 1990).  Plaintiff falls short of this standard.  Instead of providing

23  tax returns, bank statements, or income slips showing concrete evidence that his income

24  or assets are insufficient to pay attorneys' fees in this case, Plaintiff makes a series of

25  contradictory statements as to why he cannot pay.  For example, Plaintiff claims he spent

26  at least $8,000 in personal funds litigating this matter.  Doc. 149 at 5.  Later in the same

27  document, however, Plaintiff alleges that his costs were "well in excess of $20,000."  *Id.*

28  at 7.  Defendant correctly notes that Plaintiff represented himself through the majority of

1    this case.  Doc. 150 at 3-4 n.2.

2         The termination of Plaintiff's employment with Defendant does not appear to have

3    substantially limited his ability to work, nor his ability to obtain wages similar to those he

4    earned with Defendant.  Indeed, in one of his motions for extension of time, Plaintiff said

5    the extension was necessary due to "time demands from an unusually high volume of

6    assigned workload at [his] current place of employment."  Doc. 75.  Plaintiff states that

7    his income decreased by approximately fifty percent after his employment with

8    Defendant ended (Doc. 149 at 5), but Plaintiff admits that at least a portion of his lost

9    wages "was due to [him] having to take off his recruiter hat and then put on his attorney

10   hat[.]"  *Id.*  Finally, Plaintiff states he must pay "the cost and expense for two daughters

11   to attend college," but he does not further quantify or qualify that statement.  *Id.*  Plaintiff

12   claims that an award of nearly $60,000 in attorneys' fees would leave him "no other

13   option but to file for personal bankruptcy."  Doc. 171 at 15, 17.

14        There is no doubt that loss of one's employment may present a hardship.  While

15   Plaintiff argues that he will suffer extreme hardship if required to pay attorneys' fees,

16   argument is not enough.  Plaintiff fails to present evidence to support his argument.  This

17   factor weighs in favor of awarding attorneys' fees to Defendant.

18        **C.    Extent of Victory and Difficulty of the Case.**

19        As noted, Defendant prevailed on Plaintiff's second claim.  The legal issues do not

20   appear to have been particularly difficult, but Defendant was forced to prevail on

21   summary judgment and after discovery.  This fact favors an award of fees.

22        **D.    Will a Fee Award Would Discourage Other Pro Se Plaintiffs?**

23        Plaintiff does not argue that an award of attorneys' fees would have a chilling

24   effect on future litigants, but the Court is concerned about a fee award against a pro se

25   litigant in excess of $50,000 and the effect it might have on potential litigants.  The Court

26   concludes that this is a basis for reducing the award, but not for denying it.

27        **E.    Reasonableness of the Requested Award.**

28        When analyzing attorneys' fees for reasonableness, the Court must determine that:

1   (1) the hourly billing rate is reasonable; and (2) the hours expended on the case are

2   reasonable. *Id.* at 931-32. Additionally, this Court's Local Rules lists factors to consider

3   when determining whether the amount of attorneys' fees is reasonable. *See* LRCiv

4   54.2(c)(3).

5       Once a party submits an itemized list of fees with sufficient detail and establishes

6   entitlement to fees, the burden shifts to the party challenging the fees to show that they

7   are unreasonable. *See Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1286

8   (Ariz. Ct. App. 2007). Generally, the prevailing party is "entitled to recover a reasonable

9   attorney's fee for every item of service which, at the time rendered, would have been

10  undertaken by a reasonable and prudent lawyer to advance or protect his client's

11  interest[.]" *Schweiger*, 673 P.2d at 932 (quoting *Twin City Sportservice Inc. v. Charles*

12  *O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982), *cert. denied*, 459 U.S. 1009

13  (1982)).

14      Defendant has submitted an explanation for why the fees sought are reasonable

15  under Local Rule 54.2. Doc. 145 at 8-11. Defendant has also submitted an itemized list

16  of fees incurred to obtain summary judgment on Plaintiff's second claim. Doc. 145-1 at

17  Ex. B. The burden therefore shifts to Plaintiff, but he has made no clear argument as to

18  why Defendant's requested fees are unreasonable. Docs. 149, 171, 172. LRCiv 54.2(f)

19  provides that "[t]he responsive memorandum of points and authorities in opposition to a

20  motion for award of attorneys' fees and related non-taxable expenses shall identify with

21  specificity all disputed issues of material fact and *shall separately identify each and every*

22  *disputed time entry or expense item*." (emphasis added). Plaintiff's response does not

23  identify a single disputed time entry or expense item.

24      Defendant seeks recovery for approximately 270 hours of work expended over the

25  19 month period between Plaintiff's filing of his complaint and the Court's order granting

26  summary judgment. Doc. 145 at 9. Defendant contends that the time and labor spent by

27  counsel was appropriate given the amount in dispute – over $111,000 – arising from

28  Plaintiff's second claim alone. Doc. 145 at 10.

Defendant notes that its motion for summary judgment contained 135 individual statements of fact, 18 exhibits, including three affidavits made under oath, and excerpts from three sworn depositions.  Doc. 150 at 6.  It appears from analysis of Defendant's itemized statement of attorneys' fees that Defendant's counsel spent nearly 50 hours on depositions alone.  Doc. 145-1 at Ex. B.  That time was spent coordinating, preparing for, and conducting the depositions, and reviewing transcripts.  *Id.*  Defendant's counsel spent approximately 42 hours drafting and revising its answer to Plaintiff's complaint, and its motion for summary judgment, and a reply in support of its motion for summary judgment.  *Id.*   Another 47 hours were spent in correspondence between Defendant and its counsel, and counsel and the Plaintiff.  *Id.*  Significant portions of time were also spent drafting disclosure statements, corresponding with the Court, conducting discovery, and reviewing or responding to Court orders.  *Id.*  These are all actions that a reasonable and prudent attorney would take to advance a client's interests.

Lead counsel signed an "attorney retention letter" with Defendant prior to assuming responsibility for litigating the matter against Plaintiff.  Doc. 145-1 at Ex. A.  The retention letter provided counsel with Defendant's objectives in the areas of desired outcomes, case management, and costs.  *Id.*   The letter specifically addressed legal research:  "[f]or tasks that (lead counsel) will not be handling personally (and there may be tasks that (lead counsel) should not handle personally, *such as legal research*) we expect that paralegals, junior associates and contract attorneys will be used to perform those aspects . . . with you maintaining an oversight function over such efforts."  Doc. 145-1 at 7.  (emphasis added).  Lead counsel billed 8.6 hours for research related to Plaintiff's second claim.  Because Defendant clearly expressed it did not want to pay lead counsel to conduct research, the Court will subtract $2,100 from Defendant's award.[1]

Defendant utilized experienced counsel who practice primarily in the areas of labor and employment law.  Doc. 145-1 at 2.  Although the questions presented were not

---

[1] In some instances, Defendant's itemized statement of attorneys' fees did not clearly delineate hours spent researching from those spent on other tasks.  The Court thus counted 7 of the 8.6 hours billed as solely for research.

novel, the facts and issues were not always readily apparent in many of Plaintiff's motions and pleadings. This ambiguity inevitably lead to additional time spent interpreting Plaintiff's documents and researching and analyzing potential issues.

Defendant's lead counsel, a partner at Ogletree, Deakins, Nash, Smoak & Stewart, P.C., billed at a rate of $300 per hour. Doc. 145-1 at 2. Co-counsel, a senior associate at the same firm, billed at a rate of $230 per hour. *Id.* Defendant notes that these rates are significantly lower than those normally billed by these lawyers – $395 and $335 respectively. These rates are reasonable in the Arizona market.

Defendant seeks $6,061 for 31.9 hours expended by counsel's paralegal who billed at a rate of $190 per hour. In its discretion, the Court finds $150 to be a reasonable hourly rate for experienced paralegals in this area. Accordingly, the Court will subtract $1,276.00 from Defendant's award.[2]

Defendant's lead counsel has practiced law since 1991, and focuses on employment law and litigation. Doc. 141-1 at 2. Lead counsel has been rated as one of the "Southwest Super Lawyers" for the past three years. *Id.* The other attorney assigned to Defendant's case has practiced since 2003, also primarily in employment law and litigation. *Id.* It is clear that Defendant was represented by experienced and capable counsel.

In an effort to demonstrate the reasonableness of the award sought, Defendant applied a 30% discount for hours billed that were not specifically related to defense of Plaintiff's second claim. Doc. 145-1 at Ex. B. Indeed, the $59,861.60 Defendant seeks is a discount from its original bill of $67,169. *Id.* Defendant places great emphasis on the fact that it is not seeking any fees related to defense of Plaintiff's first claim. *Id.* This being the case, it is curious that Defendant discounted tasks unrelated to Plaintiff's second claim by only 30%. There is no doubt that by pursuing only those fees associated

---

[2] The Court arrived at this number by subtracting $150 from $190, and then multiplying the 31.9 hours expended by the paralegal.

1   with Plaintiff's second claim, Defendant is foregoing a significant portion of attorneys'

2   fees incurred in this case.  To meet Defendant's stated intent, the Court will further

3   reduce by 20% those tasks billed, but not related to Plaintiff's second claim.[3]  This will

4   result in a reduction in fees by $4,918.40.[4]

5       In its line-by-line analysis of Defendant's itemized statement, the Court identified

6   two errors in the hours billed and associated fees.  In both instances, it appears counsel

7   overcharged for its services.  Doc. 145-1 at 13.  Defendant's fees will be reduced by $322

8   to account for the excess billing.[5]

9   **III.  Conclusion.**

10      Taking into the account the adjustments discussed above, the Court arrives at a

11  total fee amount of $51,244.60.  This is the amount the Court would award if Defendant

12  was litigating against another business entity or a party that clearly could pay the award.

13  But recognizing that Plaintiff in this case is an individual who has not been shown to

14  have substantial means and who represented himself throughout much of this case, and

15  mindful of the need to avoid discouraging meritorious Plaintiffs from asserting claims,

16  the Court in its discretion will reduce the fee award in this case to $25,000.

---

[3] Defendant did a fair job distinguishing or omitting fees that were clearly not related to the defense of claim two, but the description of some tasks is simply too ambiguous.  The Court assumes that many tasks Defendant's counsel billed for benefited its defense against both of Plaintiff's claims.

[4] The Court conducted a line-by-line analysis of Defendant's itemized statement of attorneys' fees.  For each task that Defendant identified as discounted, the Court applied a 50% discount to the original amount billed.

[5] Co-counsel for Defendant billed at a rate of $230/hour.  The second to last entry shows two hours billed, at a cost of $552.  The last entry shows one hour billed at a cost of $460.  These amounts were adjusted to $460, and $230 respectively.

1        **IT IS ORDERED** that Defendant's motion for attorneys' fees (Doc. 169) is

2   **granted in part**.  Defendant is awarded $25,000 in attorneys' fees against Plaintiff.

3        Dated this 20th day of March, 2013.

4

5

6   _____

7                                    David G. Campbell
                                     United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28